UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTONIO GORDON | CRIMINAL ACTION<br>No. 05-10165-RGS |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE – COUNT ONE**

Now comes the Defendant, Antonio Gordon, and respectfully moves that this Court suppress any and all evidence derived from the pursuit, stop, detention, search and/or seizure of his person on or about January 9, 2006. In support thereof, defendant states that this was a warrantless search and no valid exception to the warrant requirement applies. Therefore, this stop, search and seizure violated the Fourth Amendment of the United States Constitution.

## I - STATEMENT OF RELEVANT FACTS

On January 9, 2005 the Lynn Police Department responded to 9 Cottage Street, Lynn, Massachusetts concerning a discharged firearm. The incident that was reported occurred inside of 9 Cottage Street, Lynn, Massachusetts, and not outside. In fact, there was a bullet hole that was discovered on an inside bedroom wall. The house at 9 Cottage Street is a two story house.

When the police arrived, Officer Hagerty had his service weapon drawn and Mr. Gordon was standing outside. The first thing that the police did was to point a gun at Mr. Gordon and tell him to show his hands and lie down on the ground. He was clearly not free to leave at this point in time.

The police searched Mr. Gordon and found a firearm along with the ammunition contained therein. After the police searched Mr. Gordon, they then went inside of 9 Cottage Street, Lynn, Massachusetts and talked to some individuals about the incident. It was at this point that Mr. Gordon was identified as actually being the individual that discharged the firearm, and the connection established between the individual outside and the individual that discharged the weapon. The police had already searched Mr. Gordon before they entered the property or spoke to anyone concerning this incident.

No facts have been presented in the police report that would establish how the police could say that Mr. Gordon was involved in the incident before they searched him and found the firearm. This is so because the police hadn't yet talked to anybody inside of 9 Cottage Street before the police searched the defendant. Nobody from inside of the house pointed him out or identified him as having been involved in any wrongdoing or criminal activity. All that can be said is that he was near the house.

After Mr. Gordon was searched a .357 firearm was discovered and seized along with the ammunition contained therein. The defendant did not consent to this warrantless stop, search and/or seizure.

## II – ARGUMENT

Warrantless searches and seizures are presumptively unreasonable. Coolidge v. New Hampshire, 403 U.S. 443 (1971) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions. The exceptions are 'jealously and carefully drawn' and there must be 'a showing by those who seek exemption that the exigencies of the situation made the course imperative.') The initial seizure of the defendant was undertaken without either an arrest warrant or a search warrant. Accordingly, the government bears the burden of demonstrating that the warrantless searches were permissible under a recognized exception to the warrant and probable cause requirements of the Fourth Amendment.

In addition, the officers lacked probable cause, or reasonable grounds to believe that the defendant was committing, had committed, or was about to commit a crime. Moreover, at the time of the stop, there was no evidence that the defendant was armed and dangerous. Terry v. Ohio, 392 U.S. 1 (1968). Therefore, the government cannot bear its burden of proving the seizure and search of the defendant was justified by any recognized exception to the warrant requirements of the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443 (1971).

While the Fourth Amendment protects against unreasonable search and seizures, not all encounters between law enforcement officers and citizens constitute seizures. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and

putting questions to them if they are willing to listen." U.S. v. Drayton, 536 U.S. 194, 200-201 (2002); U.S. v. Young, 105 F.3d 1, 6 (1st Cir. 1997). As the Supreme Court has found, it is only when a citizen's freedom of movement is objectively restrained that there is any foundation for invoking constitutional safeguards. U.S. v. Mendenhall, 446 U.S. 544, 553 (1980). As such, law enforcement officers are free to ask to examine a person's airline ticket, Florida v. Rodriquez, 469 U.S. 1, 5-6 (1984)(per curiam); ask for identification, U.S. v. Collis, 766 F.2d 219, 221 (6th Cir. 1985); and even enter someone's home, U.S. v. Garcia, 339 F.3d 116. 119-120 (2nd Cir. 2003).

However, the "stop" of Mr. Gordon was not permissible under the warrant exception set forth in Terry v.Ohio. In Terry, the Supreme Court held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry at 22. The Terry exception is warranted when the officer can "point to specific and articulable facts which, taken together with rational inferences derived from those facts, reasonably show that an investigatory stop [is] warranted." U.S. v. Maguire, 359 F.3d 71, 76 (1St Cir. 2004).

Police officers may conduct a brief investigatory stop of a suspect if they have reasonable suspicion, based on articulable facts, that a crime is about to be, or has been committed. Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Golab, 325 F.3d 63, 66 (1st Cir. 2003). Determining whether a reasonable suspicion exists requires an objective inquiry. Bolton v. Taylor, 367 F.3d 5. 7 (1st Cir. 2004). An "inchoate and unparticularized suspicion or 'hunch' of criminal activity is insufficient. Terry, 392 U.S. at 27. Reasonable

suspicion is evaluated in the context of the totality of the circumstances and demands a "practical, commonsense approach." United States v. Sowers, 136 F.3d 24, 28 (1st Cir. 1998).

This court must determine whether the officers' actions in stopping Mr. Gordon, were justified at their inception and whether the actions taken were "reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officers during the stop." United States v. Maguire, 359 F.3d 71, 76 (1st Cir. 2004) (internal quotation omitted). An officer may draw on his "own experience and specialized training to make inferences from and deductions about the cumulative information ... that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations and internal quotation omitted).

The fundamental holding of Terry is that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id. at 22. In order to justify a *Terry-type* search, the officer who conducted the search "must be able to articulate something more than an inchoate and unparticularized 'hunch.' United States v. Sokolow, 490 U.S. 1, 7 (1989). In evaluating the constitutional propriety of a *Terry-type* stop, courts apply a two-prong test. United States v. Owens, 167 F. 3d 739, 748 (1st Cir. 1999). The Court must "first determine whether the officer['s] actions were justified at [their] inception, and if so whether the actions undertaken by the officer[s] following the stop were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officer[s] during the stop." United States v. Trueber, 238 F.3d 79, 92 (1st Cir.

2001). "The first part of the inquiry is satisfied if the officers can point to specific and articulable facts which, taken together with rational inferences derived from those facts, reasonably show that an investigatory stop was warranted." United States v. Maguire, 359 F. 3d 71, 76 (1st Cir. 2004). (Citations omitted) (local police responding to a dispatch of an armed bank robbery encountered the disheveled defendant emerging from the back yard of a private residence in the vicinity of where the suspected stolen getaway car was found abandoned).

The warrant and probable cause requirements are not excused under Terry v. Ohio. A warrantless search is permissible under the Terry standard only where a law enforcement officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." 392 U.S. 1 at 30 (1968). If that condition is met, the officer is permitted to do no more than "briefly stop the suspicious person and make reasonable inquiries aimed at confirming or denying his suspicions." Id. The officer making the stop "must be able to articulate something more than an inchoate and unparticularized suspicion or 'hunch'" linking an individual to criminal activity. United States v. Sokolow, 490 U.S. 1, 7, (1989) (citation and some internal quotation marks omitted). This means that some of the facts on which the officer relies must be particular, that is, specific to the individual. See United States v. Cortez, 449 U.S. 411, 418 (1981); Terry, 392 U.S. at 21 n.18; United States v. Proctor, 148 F.3d 39, 42 (1st Cir. 1998). Consequently, the proper focus for evaluating the sufficiency of evidence of reasonable suspicion centers upon the objective significance of the particular facts under all the circumstances. See, e.g., Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curium).

Here, even under the government's version of events, as soon as the officer approached the house, he had his weapon drawn and pointed it at the defendant. And at the time he approached

the defendant, and then searched him, he knew only that the defendant was near the house where the incident occurred. There is nothing unusual or potentially criminal about that, and certainly nothing implicating the defendant in criminal activity. The circumstances cited by the officers were simply not enough to turn a hunch into reasonable articulable suspicion. See United States v. Woodrum, 202 F.3d 1, 13 (1st Cir. 1997) (while facts such as high crime area and the hour of night may put officers on their guard, they cannot, without more, be grounds for detaining). Consequently, under all of the circumstances, the officers' detention and searches of the defendant were unreasonable and the fruits of those searches must be suppressed.

In light of the factual assertions set forth in Mr. Gordon's Affidavit, the stop of the defendant was not reasonable at its inception. There were no obvious signs that he had committed, was committing, or was about to commit a crime. For example, he was not brandishing a weapon of any kind. At the point of the seizure, the officer had no evidence to believe reasonably that the defendant had committed any crime; thus, there was no need to detain him. Therefore, it is clear that the officer's actions were unreasonable at their inception.

The second prong of the Court's analysis is consideration of "whether the scope of the investigatory stop was reasonable under the circumstances." United States v. Maguire, supra at 77; United States v. Trueber, supra. *Assuming arguendo* that the officer's initial actions toward the defendant were constitutionally justified, the government yet cannot prove that his actions undertaken thereafter "were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officer[s] during the stop." United States v. Trueber, supra.

"Limited searches of a person for weapons are constitutionally permissible adjuncts to a Terry

stop if 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger.'" United States v. Nee, 261 F. 3d 79, 83 (1st Cir. 2001) (Quoting Terry v. Ohio, supra at 27). At the point at which the officer conducted the pat-frisk of the defendant, the only information he had in his possession was that the defendant was near the house. The link tying him to the incident had not yet been established. The defendant was not obviously armed. The officer had no information that the defendant was armed and dangerous, or that he was wanted on outstanding criminal charges. There was simply not enough to warrant a reasonably prudent man in the officer's position believing that his safety or the safety of others was in question from this particular individual.

Terry and its progeny permit investigative detentions of persons where reasonable suspicion of criminal behavior exists. However, the exception created for Terry stops was never meant to displace or challenge the core right of all persons to avoid police encounters where objective evidence of criminality is lacking to warrant an intrusion upon one's liberty and personal security. Indeed, since Terry, the Court has spoken with one voice and left no doubt that individuals have an affirmative right to avoid police contact and that the exercise of that right, by itself, cannot justify an investigative detention.was in danger so as to warrant a pat-frisk for weapons.

It is well established that individuals enjoy the rights of freedom of movement and personal security while on the streets. William Blackstone described the privilege this way: "This personal liberty consists in the power of locomotion, of changing situation, or removing one's person to whatsoever place one's own inclination may direct; without imprisonment or restraint, unless by due course of law." 1 William Blackstone, Commentaries on the Laws of

England 134 (1783).

Fourth Amendment jurisprudence also recognizes that pedestrians are guaranteed the right to move about the streets free of police interference. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." Terry v. Ohio, 392 U.S. 1, 8-9 (1968). Chief Justice Warren's majority opinion in Terry noted the common law origins of this right:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

Terry, 392 U.S. at 9, quoting Union Pac.R.Co. v. Botsford, 141 U.S. 250, 251 (1891).

Prior to Terry, police could not seize an individual unless they possessed probable cause to arrest the person.[1] Terry created an exception to the traditional probable cause rule. It held that, where an officer reasonably believes that criminal conduct "may be afoot" and that a suspect "may be armed and presently dangerous," an officer may frisk the suspect for weapons. Terry, 392 U.S. at 31.[2] Although this expansion of police power -- the so-called Terry stop and frisk -- constituted a significant change in Fourth Amendment doctrine, Chief Justice Warren emphasized that the Court was not retreating from the constitutional norm that citizens were free

1 See Dunaway v. New York, 442 U.S. 200, 207-09 (1979); Florida v. Royer, 460 U.S. 491, 498 (1983)(plurality opinion).

2 The term "reasonable suspicion" was not used by the Terry majority. "[N]owhere in Chief Justice Warren's opinion will you find the words 'reasonable suspicion' that have come to exemplify the Terry standard. Instead, the opinion carefully employs and adapts the language of Brinegar v. United States, [338 U.S. 160 (1949)], the classical statement of the probable cause standard, while recognizing that officers may conduct protective searches when possessed of a lesser quantum of information." Earl C. Dudley, Jr., "Terry v. Ohio, The Warren Court, and The Fourth Amendment: A Law Clerk's Perspective," 72 St. John's L.Rev. 891, 896 (1998)(footnotes omitted): 4 Wayne F. LaFave, Search and Seizure s 9.5(a) at 251 (3d ed. 1996)(same). It was in later cases that the Court began using the term "reasonable suspicion" to describe the quantum of evidence needed to justify an investigative detention of a person. See United States v. Brignoni-Ponce, 422 U.S. 873. 881-84 (1975); Brown v. Texas, 443 U.S. 47, 52-53 (1979).

to come and go as they pleased without official restraint or interference, unless objective evidence warranted a police intrusion. Id. at 21-22. [3]

**The Defendant was seized within the meaning of the Fourth Amendment.**

To determine whether a particular police-citizen encounter constitutes a seizure implicating the Fourth Amendment, the First Circuit applies a fact-specific inquiry into whether a reasonable person would have felt free to leave and terminate the encounter. See United States v. Cardoza, 129 F.3d 6, 14-15 (1st Cir. 1997)(citing Florida v. Bostick, 501 U.S. 429, 439 (1991)); United States v. Young. 105 F.3d 1. 5-6 (1997). The analysis "considers the totality of the circumstances particular to each encounter." United States v. Cardoza, 129 F.3d at 15. In United States v. Mendenhall, 446 U.S. 544 (1980), Justice Stewart wrote that examples of circumstances that might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen. or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554 (opinion of Stewart, J.).

The circumstances surrounding defendant's encounter with the Lynn police demonstrate that defendant was seized within the meaning of the Fourth Amendment prior to the officers' search or observations concerning a gun. At the point where the Lynn police officer exited the cruiser and pointed their service revolver at the defendant and told him to show his hands - the

---

3 Brinegar v. United States, 338 U.S. 160, 177 (1949)("[T]he citizen who has given no good cause for believing he is engaged in [criminal] activity is entitled to proceed on his way without interference")(footnote omitted); Carroll v. United States, 267 U.S. 132, 154 (1925)("[T]hose lawfully within the country [are] entitled to use the public highways [and] have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise").

defendant was seized within the meaning of the Fourth Amendment. This was not a police-citizen encounter where the officers merely rolled down their window and asked defendant for a moment of his time. Compare United States v. Cardoza, 129 F.3d 6, 14-15 (1st Cir. 1997)(no seizure where officers in unmarked car pulled over to curb; rolled down window and asked the defendant "what's up?"; and defendant turned and approached patrol car); United States v. Young, 105 F.3d 1, 5-6 (1997)(no seizure where officers pulled cruiser to curb alongside the defendant; rolled window down and asked defendant if he had a minute to speak with them; and defendant said "sure"). Rather, this was a circumstance where the threatening presence of the police, a pointed gun at the citizen, and the use of language or a tone of voice indicating that compliance with the officer's request was compelled. Mendenhall, 446 U.S. at 554. Certainly under these circumstances defendant would not have felt free to terminate his encounter with any of the police officers

**The Warrantless Searches of the Defendant Were Not Valid Searches Incident to Arrest.**

By the officer's own report and admission, the Lynn police did not immediately arrest the defendant prior to the search of the defendant, or the questioning of the occupants of the house. It was only after the stop and search and the questioning of the occupants that there was evidence of criminal activity. For this reason, the government may not justify the subsequent searches of the defendant as valid searches incident to arrest. See Jones v. United States, 357 U.S. 493 (1958); Smith v. Ohio, 494 U.S. 541 (1990) ("It is axiomatic that an incident [to arrest] search may not precede an arrest and serve as part of its justification"); United States v. Ortiz, 331 F. Supp 514 (D. P.R. 1971).

Searches based on nothing more than a hunch that a crime may have been committed have long been universally condemned. See United States v. Lefkowitz, 285 U.S. 452 (1932); Kremen v. United States, 353 U.S. 346 (1957); United States v. Rivera, 867 F.2d 1261 (10th Cir. 1989) (warrantless search invalid where there was no probable cause for arrest prior to search). Law enforcement officials may not conduct, prior to arrest, a "general and exploratory" search or a "fishing expedition" in an effort to "strengthen their case before arresting" a suspect. Ortiz, 331 F. Supp. at 519. That is precisely what the officer did here, and for the same reasons the Ortiz search was invalid, the warrantless searches here are invalid as well.

**The Defendant Did Not Consent to Any Searches.**

At no time did the defendant consent to the search of his person. Indeed, he was not given so much as the opportunity to consent, but was immediately seized and searched by the officer. Nor did the defendant "consent" to a search of his person by acquiescing to the officer's behavior.

It is well settled that consent given after an illegal search and seizure is invalid. See, e.g., Florida v. Royer, 460 U.S. 491, 501 (1983); United States v. Valdez, 931 F.2d 1448, 1452 (11th Cir. 1991). Additionally, the officer never advised the defendant that he could withhold consent for a search. That, when combined with other improprieties such as occurred here, has been held to invalidate consent. See United States v. Jones, 846 F.2d 358, 361-61 (6th Cir. 1988).

For these reasons, the search of the defendant and seizure of the gun from the defendant

indisputably constitutes a search, without consent, and is contrary to the Fourth Amendment.

## III. FRUITS OF THE ILLEGAL STOP AND/OR SEARCH MUST BE SUPPRESSED

Where, as here, an individual has been illegally seized the court is required to determine whether evidence discovered must be suppressed as fruit of the illegal detention. If the evidence was obtained by exploitation of the violation of the defendant's Fourth Amendment rights, then the evidence must be suppressed. Wong Sun v. United States, 371 U.S. 471, 485 (1963); Hicks v. United States, 705 A.2d 636, 639-640 (D.C. 1997).

Here, the gun and ammunition was found as a direct consequence of the stop and/or frisk and/or search and seizure by the police which exceeded the scope legally permissible when stopping and restraining the defendant. Furthermore, the actions undertaken by the officers following the stop were not reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officers during the stop. See United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998). Therfore, the seizure of the gun and any other evidence obtained during the stop and detention was a fruit of the primary illegality and must be suppressed. Wong Sun v. United States, 371 U.S. 471. 485 (1963); Hicks v. United States, 705 A.2d 636, 639-640 (D.C. 1997). See also United States v. Acosta-Colon, 157 F.3d 9 (1st Cir. 1998) (baggage claim tickets that defendant tried to swallow constituted fruit of illegal detention); LaFave, SEARCH AND SEIZURE, § 2.6(b), at 584-85 (3rd ed. 1996). ("Where a person has disposed of property in response to a police effort to make an illegal seizure . . . courts have not hesitated to hold that property inadmissible." (footnotes omitted)).

## IV - CONCLUSION

For the foregoing reasons. the defendant respectfully moves that this Court suppress from evidence at trial a gun and any other items allegedly observed or seized during a warrantless search and seizure of him on January 9, 2005.

Respectfully submitted,

/s/ Glen P. Randall

Glen P. Randall
BBO#: 563472
Murphy & Randall, LLP
50 Burlington Mall Road, Suite 100
Burlington, MA 01803
Tel.: (781) 238-0300