UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | Criminal No. 05-10165-RGS |
| ANTONIO GORDON | ) ) ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
<u>SEIZED ON JANUARY 9, 2005</u>

The United States, by and through United States Attorney Michael J. Sullivan and Assistant United States Attorney William H. Connolly, hereby submits this memorandum in opposition to Defendant Antonio Gordon's "Motion to Suppress Evidence - Count One" ("Mot. Supp.").

The government respectfully requests that the defendant's motion be denied without a hearing because he has failed to assert facts that would warrant suppression of the evidence.

### **FACTS**[1]

On January 9, 2005, the Lynn Police received a call from a civilian, Margaret Rau ("Rau"), at 9 Cottage Street in Lynn, Massachusetts. In addition to providing her name, Rau provided her telephone number and told the police dispatcher that she lived in the first floor apartment--Apartment Number 1--at 9 Cottage Street. In her report to the police dispatcher, Rau

---

[1] The facts were gleaned from the tape recordings of the Rau telephone call to police and the police dispatch, as well as the relevant Lynn Police report.

1

stated that her daughter's friend, Antonio Gordon, had just shot off a firearm inside her apartment.  Rau then ordered Gordon to leave, but, according to Rau, he was presently outside the apartment at the front door.  Rau described Gordon as a 21 year-old, black male, and wearing all black.

In his radio report provided to responding cruisers, the police dispatcher included virtually all of the details provided by Rau, including the fact that the shooter was now outside the house.

Upon arrival at 9 Cottage Street, Lynn officers saw a lone black male standing outside 9 Cottage Street yelling into a window at the occupants of 9 Cottage Street.  The officers ordered the male, subsequently identified as Antonio Gordon, to the ground and pat frisked him.  The frisk uncovered a loaded .357 magnum in Gordon's front left pants pocket.

## ARGUMENT

**1.   The stop and frisk were permissible under <u>Terry</u>**

In <u>Terry v. Ohio</u>, the Supreme Court held that a police officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.  <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).  This articulable suspicion standard is not a stringent one.  The basis for an investigatory stop does not require probable cause; rather, it must be based on "at least a minimal level of objective

justification." United States v. Wardlow, 528 U.S. 119, 123 (2000).

The defendant asserts that his seizure and subsequent pat-frisk was unlawful because the officers did not have a reasonable suspicion that he was engaged in criminal activity, nor did they have reason to believe that he was armed and dangerous. Def. Mem. of Law p.3. This claim is without merit. Clearly, on the facts recited above, the information known to the responding officers provided a reasonable, articulable suspicion that the individual observed outside 9 Cottage Street was the man who had discharged a firearm inside of 9 Cottage Street. Nothing more was needed to justify the seizure and subsequent pat-frisk.

**2.    The defendant is not entitled to a hearing**

The motion should be denied without an evidentiary hearing because the defendant has failed to meet his burden of advancing facts that, if proved, would require the requested grant of relief.

Local Rule 7.1(B)(1) states that a party filing a motion "shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted." The rule also states that "[a]ffidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion." The mandatory language of Local Rule 7.1 coincides with the threshold burden imposed by

3

First Circuit case law for obtaining an evidentiary hearing on a motion to suppress.

In United States v. Migely, 596 F.2d 511 (1st Cir. 1979), the Court affirmed the district court's denial of the defendant's motion to suppress evidence without conducting an evidentiary hearing.  In so doing, the Court set forth the threshold burden that a defendant must meet in order to obtain an evidentiary hearing on a motion to suppress:

> Evidentiary hearings on motions under Fed.R.Crim.P. 41(e) are not granted as a matter of course; they are required only when a defendant makes a sufficient showing that a warrantless search has occurred.  The defendant must allege facts, "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented."  The factual allegations must be such that, if proved, would require the grant of relief, and must be more than "general and conclusory or based upon suspicion and conjecture."

Id. at 513 (citations omitted).[2]

In United States v. Panitz, 907 F.2d 1267 (1st Cir. 1990), the Court affirmed the district court's denial of the defendant's motion to dismiss for alleged outrageous government misconduct

---

[2] In Migely, the Court referred to motions to suppress made pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.  Rule 41(e) refers to motions for the return of property made by persons who are aggrieved by an unlawful search and seizure but states that such motions made after an indictment is filed "shall be treated also as a motion to suppress under Rule 12."

without conducting an evidentiary hearing.  In so doing, the Court held that "a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion."  Id. at 1273.  Rather, it ruled, "[t]he test for granting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?"  Id.  The Court further held that the district court acted within its discretion in rejecting the requested evidentiary hearing because the material facts were not in dispute.  Id. at 1274.

In support of Gordon's motion to suppress, he has submitted an affidavit as well as the Lynn Police incident report.[3]  Notably, in the defendant's affidavit he does not contest any of the facts described in the Lynn Police incident report.  The report states that officers responded to 9 Cottage Street on a report that Antonio Gordon had "shot a firearm at this address."  Upon arrival at the above address, Officer Hagerty of the Lynn Police department observed the defendant yelling into a window on the right side of 9 Cottage Street.  Officer Hagerty, with his gun drawn, ordered the defendant to show his hands and to get on the ground.  A subsequent pat-frisk uncovered a loaded .357

---

[3] In his submissions, the defendant has not included the extensive details from the recording of the civilian call to the police dispatcher and the ensuing radio dispatch to responding units.

Magnum in the defendant's pocket.

Given the defendant's submissions, in order to grant a hearing on the defendant's motion, the Court must be satisfied that the above facts, if true, did not provide the police with reasonable suspicion to believe that the defendant had committed a crime. The government contends that even on the limited facts contained in the defendant's submission, Officer Hagerty would have been warranted in stopping the defendant and conducting a pat-frisk.

In the defendant's memorandum of law, he argues that there are no facts "in the police report that would establish how the police could say that Mr. Gordon was involved in the incident before they searched him and found the firearm." Def. Mem. of Law p. 2. This argument, however, ignores that an officer making a <u>Terry</u> stop is entitled to draw reasonable inferences from the facts in light of his experience. <u>United States v. Walker</u>, 924 F.2d 1, 4 (1st Cir. 1991). Even if the facts known to Officer Hagerty were limited to those in the police report, it would have been entirely reasonable for him to infer that the individual outside of the apartment yelling at the occupants inside the apartment was likely the individual who had fired the shot inside the apartment. Accordingly, even applying the defendant's narrow view of the facts, suppression would not be warranted.

**3.   The pat-frisk was justified**

The second prong of Terry--the frisk--is amply supported by the basis for the stop alone. Indeed, if the facts gave rise to a reasonable suspicion to believe that Gordon was in possession of a firearm, then nothing more was required to justify a pat frisk for weapons. See Terry, 392 U.S. at 27.

## CONCLUSION

In summation, the facts presented to Officer Hagerty, considered in light of the circumstances and taking into account his experience, indeed suggested that the defendant was illegally carrying a firearm. Thus, Officer Hagerty was justified in conducting both a Terry stop and Terry frisk. At the very least, the facts were suspicious enough that Officer Hagerty was permitted to resolve any ambiguity. Terry, 392 U.S. at 30. Furthermore, because the defendant has failed to assert facts that would warrant suppression, his motion must be denied without a hearing.

                                      Michael J. Sullivan
                                      United States Attorney

                By: /s/ William H. Connolly
                     Assistant U.S. Attorney

May 12, 2006