UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES OF AMERICA      )
                              )
V.                            )     Criminal No. 05-10165-RGS
                              )
ANTONIO GORDON                )
                              )
```

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
SEIZED ON MAY 3, 2005

The United States, by and through United States Attorney
Michael J. Sullivan and Assistant United States Attorney William
H. Connolly, hereby submits this memorandum in opposition to
Defendant Antonio Gordon's "Motion to Suppress - Count Two"
("Mot. Supp.").

**Facts**[1]

On May 3, 2005, a call was placed to the Lynn Police
dispatcher reporting a group of people fighting and brawling at
32 Morris Street.  According to the caller, people in the
neighborhood had been complaining about the residents at 32
Morris Street.  Upon receiving this information, the police
dispatcher radioed to area units that there was a fight at 32
Morris Street.  The first officers to respond were familiar with
the address as they had responded there on numerous occasions for
fights and disturbances.  Upon their arrival, the officers saw a

---

[1]The facts were gleaned from a relevant Lynn Police
recording of the civilian telephone call and police dispatch, as
well as a relevant Lynn Police incident report.

1

group of men standing in the driveway to 32 Morris Street.  As
the officers approached, they observed Antonio Gordon, who was
known to them from a previous firearm arrest, take flight.  Lynn
Police Officer Godbout, who was personally aware that Gordon had
previously been arrested for carrying a firearm, yelled, "Hey,
Antonio, hold up!"  Gordon responded, "Why are you stopping me?"
As the officers closed in on Gordon, who was now standing in the
middle of the street, he yelled that they were harassing him.  As
the officers neared Gordon, he attempted to run again but was
stopped by the officers.  As Gordon was stopped, he began to
reach for his waistband.  Officer Godbout grabbed Gordon's hands
and felt a hard object protruding from Gordon's waist.  Believing
the object to be a gun, Officer Godbout yelled to the other
officers that Gordon had a gun.  At this point, Gordon began to
struggle violently and continued reaching for his waistband.
Gordon was eventually subdued and a loaded .22 caliber Smith &
Wesson revolver was pulled from his waist.

**<u>ARGUMENT</u>**

The defendant contends that the officers' seizure of him was
unlawful because the police "had no evidence to believe
reasonably that the defendant had committed any crime; thus there
was no need to detain him." Def. Mem. of Law p. 8.  The
defendant's claim fails because the seizure was a lawful <u>Terry</u>
stop.

I.   **THE STOP OF THE DEFENDANT WAS LAWFUL BECAUSE THE OFFICERS HAD REASONABLE SUSPICION TO BELIEVE THAT THE DEFENDANT WAS INVOLVED IN A FIGHT OR A DISTURBANCE**

The defendant seeks to suppress from use in evidence the handgun seized from him. (Mot. Supp.).  The defendant contends that his seizure, and ultimately the seizure of the firearm, were unlawful.  (Motion to Suppress)  This argument fails because the seizure of the defendant did not occur until he was physically restrained by the Lynn Police officers, <u>see</u> <u>United States v. Hodari D.</u>, 499 U.S. 621, 626 (1991), and the seizure occurred after the officers had a reasonable suspicion to believe that the defendant was engaged in unlawful activity.  <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).

A.   **THE SEIZURE**

The officers did not need to have reasonable suspicion in order to speak with the defendant.  In <u>United States v. Young</u>,105 F.3d 1 (1st Cir. 1997), the First Circuit confirmed,  "[t]he Supreme Court has repeatedly emphasized that not all personal intercourse between the police and citizens rises to the level of a stop or seizure. <u>See</u> <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991) (citing cases).  Police may approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment." <u>United States v. Young</u>, 105 F.3d at 6-7.  Thus, when Officer Godbout first asked Gordon to "hold up,"

3

the defendant's Fourth Amendment rights were not implicated by the officer's intention to talk with him about his behavior.

The issue of the when the seizure occurred in this case is governed by the Supreme Court's analysis in <u>California v. Hodari D.</u>, 499 U.S. 621 (1991). In <u>Hodari D.</u>, the Supreme Court held that a seizure does not occur until an individual yields to police authority. <u>California v. Hodari D.</u>, 499 U.S. at 626. The <u>Hodari D</u>. Court explained,

> The language of the Fourth Amendment, of course, cannot sustain [Hodari D's] contention. The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure.

The Court concluded:

> In sum, assuming that [the officer's] pursuit in the present case constituted a "show of authority" enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled.

<u>Id</u>. at 626-629 (citations omitted).

Applying this standard to the instant case compels the conclusion that there was no seizure prior to the defendant's second attempt at flight. At no point prior had the defendant in any way ceded to Officer Godbout's authority. Hence, a seizure did not occur until the officers physically restrained the

defendant.

**B.    JUSTIFICATION FOR THE STOP**

In Terry v. Ohio, the Supreme Court held that a police
officer may conduct a brief, investigatory stop when the officer
has a reasonable, articulable suspicion that criminal activity is
afoot.  Terry v. Ohio, 392 U.S. 1, 30 (1968).  This articulable
suspicion standard is not a stringent one.  The basis for an
investigatory stop does not require probable cause; rather, it
must be based on "at least a minimal level of objective
justification."  United States v. Wardlow, 528 U.S. 119, 123
(2000).

A Terry analysis is fact-specific and a court should
consider the totality of the circumstances confronting police at
the time of the stop.  United States v. McCarthy, 77 F.3d 522,
530 (1st Cir. 1996).  Although the standard is an objective one,
the circumstances are "to be viewed through the eyes of a
reasonable and cautious police officer on the scene, guided by
his experience and training."  United States v. Trullo, 809 F.2d
108, 112 (1st Cir. 1987), cert. denied, 482 U.S. 916 (1987).
While a "hunch" is not sufficient, a court must give due weight
to the specific reasonable inferences which an officer is
entitled to draw from the facts in light of his experience.
United States v. Walker, 924 F.2d 1, 4 (1st Cir. 1991).

Here, the stop of the defendant was lawful because the

officers had a reasonable, articulable suspicion that Gordon had been involved in criminal activity. Paine v. City of Lompoc, 160 F.3d 562, 566 (9th Cir. 1998) (reasonable suspicion to stop where two men, including one with a bloody shirt, seen walking quickly away from scene of a fight in an apparent attempt to avoid contact with the police); see also United States v. Hunter, 94 F.3d 1302, 1306 (10th Cir. 1996)(reasonable suspicion to stop because defendant was in a high-crime area, standing over and watching illegal gambling, walked quickly away upon police approach, and officer saw bulge in defendant's waistband). Bearing in mind that the reasonable suspicion standard of Terry permits the drawing of rational inferences from articulable facts, a reasonable officer in Officer Godbout's position would have been warranted in the belief that Gordon had committed an assault, or was at least involved in a disturbance. In drawing this inference, Officer Godbout was permitted to consider both Gordon's proximity to the scene of the assault and the timing of his flight from the scene of the illegal activity. See United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (proximity to illegal activity and flight upon arrival of police relevant to reasonable suspicion analysis); United States v. Viegas, 639 F.2d 42,45 (1st Cir. 1981)(evasive actions relevant); United States v. Scott, 270 F.3d 30, 41 (1st Cir. 2001)(flight combined with other observations may support reasonable suspicion).

6

While the timing of Gordon's departure from the scene and his behavior are perhaps innocent facts when considered in isolation, when considered together, as they must, they add up to reasonable suspicion.  See United States v. Gilliard, 847 F.2d 21, 24 (1st Cir. 1998)(court must consider all of the relevant circumstances, which are not to be dissected and viewed singly); United States v. Arvizu, 534 U.S. 266, 277 (reasonable suspicion may exist even when each fact alone is susceptible to an innocent explanation).

The defendant, however, contends that his behavior, in particular his flight, was consistent with a desire to avoid police contact.  The defendant is right.  Viewed in isolation, these facts may well be indicative of innocent behavior, but the defendant forgets that an officer making a Terry stop need not rule out the possibility of innocent conduct.  United States v. Arvizu, 534 U.S. at 277. "It must be rare indeed that an officer observes behavior consistent only with guilt and incapable of any innocent explanation." United States v. Price, 599 F.2d 494, 502 (2d Cir. 1979).  At the very least, the facts were suspicious enough that the officers were permitted to resolve any ambiguity. See Terry, 392 U.S. at 30.

The defendant also contends that the government "should not be allowed to draw a distinction between conduct that 'simply avoids the police,' and a decision to 'take flight,' which the

7

government may argue justifies an investigative stop." Def. Mem.
of Law p. 13.  The Supreme Court disagrees.  In <u>Illinois v.
Wardlow</u>, 528 U.S. 119, 120 (2000), the Supreme Court upheld the
stop of an individual based upon his unprovoked "headlong flight"
from police in a high crime area.  In assessing the significance
of unprovoked flight from the police, the Court acknowledged that
flight is not necessarily indicative of wrongdoing, but it is
suggestive of such. <u>Id</u>.


The Court stated:

> But unprovoked flight is simply not a mere
> refusal to cooperate.  Flight, by its very nature,
> is not "going about one's business"; in fact, it
> is just the opposite.  Allowing officers
> confronted with such flight to stop the fugitive
> and investigate further is quite consistent with
> the individual's right to go about his business or
> to stay put and remain silent in the face of
> police questioning.

<u>Id</u>. at 125.  Indeed, Gordon's two attempts at flight permitted
the police to investigate further.

**C.    THE PAT FRISK**

Once Gordon began to reach for his waistband, the officers
could reasonable believe that Gordon was armed.  This occurred
before the police had initiated any kind of a pat-frisk.  Thus,
the second prong of <u>Terry</u>--the frisk--is amply supported by
Gordon's behavior during the struggle with police.

8

**CONCLUSION**

In summation, the facts presented to the officers, considered in light of the circumstances and taking into account their experience, suggested that the defendant had been involved in a fight or disturbance.  Thus, the officers were justified in conducting a <u>Terry</u> stop.  Once the defendant began reaching for his waistband, the officers had a justifiable concern that the defendant was armed, and were permitted to conduct a <u>Terry</u> frisk.

Accordingly, for the foregoing reasons, the defendant's Motion to Suppress must be denied.

Respectfully submitted,

Michael J. Sullivan
United States Attorney

By:  <u>/s/ William H. Connolly</u>
Assistant U.S. Attorney

May 12, 2006