UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>ANTONIO GORDON )<br>DEFENDANT )<br>) | CRIMINAL ACTION<br>No. 05-CR-10165-RGS |

## NOTICE

The defendant hereby notifies the Court that he will be seeking to have the Court impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 18 U.S.C. §3553.

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND/OR BOOKER VARIANCE

Now comes the defendant, Antonio Gordon, in the above entitled Criminal Action and hereby respectfully submits the following Sentencing Memorandum to aid the court in sentencing. The defendant hereby sets forth all factors that the Court should consider in determining what sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a).

1

## I – INTRODUCTION

Antonio Gordon plead guilty on November 30, 2006 to a two count Indictment charging him with two violations of 18 U.S.C. § 922(g)(1) Possession of a Firearm and Ammunition by a Convicted Felon. The United States Probation Office has calculated the guideline sentencing range as 46-57 months (Total Offense Level 17, Criminal History Category V) (**PSR ¶ 88**). However, the defendant respectfully requests that the court impose the following sentence:

1) Forty (40) months committed

2) Two (2) years supervised release pursuant to 18 U.S.C. § 3583 (b)

At the time of filing this Sentencing Memorandum defense counsel is unsure of the Government's exact sentencing recommendation, but anticipates the government will recommend a middle guideline sentence. Defense counsel further anticipates the government's reasoning will be based upon the factors that there were two separate guns involved, on two separate dates, and that on one occasion the weapon was accidentally discharged. However, these anticipated arguments by the government are already taken into account and given due weight and consideration by the current existing sentencing guidelines.

Moreover, while the defendant understands these factors, the defendant would like to suggest there are more compelling factors in mitigation and in support of a slightly below guideline sentence. First, the defendant suggests that but for the second offense on May 3, 2005, the defendant would not have been indicted in Federal Court. This seems to be a fair inference based upon the fact that the January 9, 2005 offense did not result in an instant indictment, but was rather indicted in June, 2005 after the May, 2005 offense.

Additionally, the guideline sentencing range of 46-57 months (Total Offense Level 17, Criminal History Category V) (**PSR ¶ 88**) reflects a Criminal History Category V. As the court is well aware, Category V is the second highest category. If we look closely at the Criminal History calculation, several issues are raised. The second highest Criminal History is assigned as a result of the following three convictions:

| | | | |
|---|---|---|---|
| 1) (**PSR ¶ 36**) | 0113 CR 5265 | 3 points |
| 2) (**PSR ¶ 37**) | 0213 CR 865 | 3 points |
| 3) (**PSR ¶ 38**) | 0213 CR 5164 | 2 points |

Two additional points were then added as a result of the instant offense being committed less than two years following the defendant's release from custody. Significantly, Mr. Gordon missed Criminal History Category IV by one point, which would have resulted in a guideline sentence of 37-46 months (Total Offense Level 17, Criminal History Category IV). Mr. Gordon's proposed sentencing recommendation falls within the Criminal History Category IV guideline range and will be the longest committed sentence he has ever served.

It is also significant to mention that Docket No: 0213 CR 5164, which resulted in 2 points, and thereby catapulting Mr. Gordon's into the next Criminal History Category, was a Disorderly Conduct charge, one of Massachusetts' least serious offenses1. Additionally, it is worthy to note that Mr. Gordon's entire criminal history points were scored in a very short period of time

| | | | |
|---|---|---|---|
| 1) (**PSR ¶ 36**) | 0113 CR 5265 | October 2001 – date of offense |
| 2) (**PSR ¶ 37**) | 0213 CR 865  | February 2002 – date of offense |
| 3) (**PSR ¶ 38**) | 0213 CR 5164 | August 2002 – date of offense |

---

1 Often times, a Massachusetts District Court judge will Guilty-file a Disorderly Conduct charge when a defendant is resolving multiple cases on the same day. Had this been dome, the defendant's Criminal History would have been reduced by one Criminal History Category resulting in a guideline sentence of 37-46 months.

So, within the brief period of ten (10) months, Mr. Gordon accumulated these three cases and thereafter resolved them all on October 29, 2002 by way of a one concurrent sentence. It is upon this basis that Mr. Gordon respectfully suggests that the second highest criminal history score overstates his actual criminal activity.

Therefore, the defendant respectfully suggests that his proposed sentence is appropriate and one that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2). United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (January 12, 2005). Under the circumstances of this case, the proposed sentence is reasonable, sufficient, and not greater than necessary.

## II - SENTENCING UNDER BOOKER

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi the Court concluded that:

> [any] fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756. 2

      Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757. Additionally, the First Circuit recently held, "We do not find it helpful to talk about the guidelines as "presumptively" controlling or a guidelines sentence as "per se reasonable," United States v. Jimenez-Beltre, 05-1268 (1st Cir. 2006).

      Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well. See § 3553(a); Booker 125 S. Ct. at 757. Therefore, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

      In Booker, the U.S. Supreme Court, per Justice Stevens, ruled that the Federal Sentencing Guidelines were only advisory in nature and not mandatory. This decision was reached as an extension of Apprendi and Blakely because the U.S.S.G. requires upward departures when the sentencing court finds certain facts to exist. In the absence of the fact of a prior conviction, the

---

2 It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998). But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 125 S.Ct. 1254 (2005). Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agree that Almendarez-Torres was wrongly decided. 125 S.Ct. at 1264 (Thomas, J., concurring).

aggravating factors must be determined by a jury beyond a reasonable doubt. The majority rejected the government's argument that there would only be an Apprendi/Blakely violation if the ultimate sentence exceeded the applicable maximum sentence for the crime. In rejecting the argument, the majority found that the remedy was to strike the "mandatory" provisions, paired with permitting the trial court to "consider" the guidelines and to impose a sentence that fulfills the standard sentencing goals found in 18 U.S.C. § 3553. In Justice Stevens' own language, it is now Congress' decision on what to do, "the ball now lies in Congress' court. The National Legislature is equipped to devise and install, long term, a sentencing system compatible with the Constitution that Congress judges best for the federal system of judges."

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
> **(B) to afford adequate deterrence to criminal conduct**
> **(C) to protect the public from further crimes of the defendant; and**
> **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> **1) "the nature and circumstances of the offense and the history and characteristics of the defendant" §3553(a)(1);**
> **2) "the kinds of sentences available" (§ 3553(a)(3);**
> **3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct §3553(a)(6);**
> **4) "the need to provide restitution to any victims of the offense." § 3553(a)(7).**

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1. *See also* United States v. Nellum, Slip Copy, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind., Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, 359 F.Supp.2d 521, (W.D. Va. Mar. 7, 2005) (Jones, J)(concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth (age 17) when he committed his predicate offenses and noting that in Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically

7

apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore" United States v. Ranum, 353 F Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker. United States v. Jaber, 362 F.Supp.2d 365, 2005, (D. Mass. March 16, 2005) (Gertner, J). *See also* United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

> Justice Scalia explains the point well in his dissent from Booker's remedial holding:
>> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence any within the statutory range. If the majority thought otherwise — if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed — its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines.

8

See <u>United States v. Denardi,</u> 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence to be no greater than necessary to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates the statute and is reversible, even if within guideline range).

### III - THE OFFENSE

It was never Mr. Gordon's intent to use the firearms in any manner other than self defense (**PSR ¶ 88**), nor were the firearms used in the commission of any independent crime. The only reason that Mr. Gordon carried a gun was "because of where he lived." Relative to the incident that occurred on January 9, 2005, the defendant respectfully states that the gun went off by accident when it fell off the night stand (**PSR ¶ 15**). Mr. Gordon has apologized to Ms. Rau for this incident (**PSR ¶ 15**) and upon reflection understands the full and complete dangerousness of this situation and acknowledges how much worse it could have been. Notwithstanding his actions, Mr. Gordon maintains a positive relationship with this family and offers the above explanation not as an excuse, but rather in an effort to place his criminal conduct in a broader context.

As to the offense on May 3, 2005, and as was more fully developed at the Motion to Suppress Hearing, the police responded to 32 Morris Street for a general disturbance. There was no indication that Mr. Gordon was involved in any way in the disturbance at 32 Morris Street, nor was any gun ever seen or brandished. When the offices arrived, Mr. Gordon tried to leave the area by walking away and was stopped. These facts also support the proposition that Mr.

Gordon only [3] carried the weapon for self defense, for even in light a disturbance and commotion, the gun was never displayed.

## IV – APPLICATION OF THE STATUTORY SENTENCING FACTORS

As we just examined under the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). Booker, 125 S.Ct. at 764-65. In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7). The sentencing guidelines are no longer binding on the court. Id. Therefore, in the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. **Nature and circumstances of the offense and the history and characteristics of the defendant § 3553(a)(1)**.

The United States Supreme Court has restored to Federal judges the discretion to be reasonable and to try to accurately gauge the prospect of rehabilitation based upon the characteristics of a defendant. Mr. Gordon is satisfied with the Presentence Report generally, but would like to highlight several areas. Mr. Gordon's father left his mother when she was pregnant

---

[3] It is not the defendant's intention to use the word "only" lightly, and the defendant understands that his past reasoning is completely illegal and dangerous and assures the court that he will not be involved in this type of activity in the future.

(**PSR ¶ 53**) with the defendant and Mr. Gordon has only met his father on two occasions. Growing up, Mr. Gordon lived with his mother and grandmother in the Orchard Park projects until the defendant was four years old (**PSR ¶ 53**). After his grandmother's death, his mother was evicted from the apartment and the defendant lived with his aunt while his mother went from one homeless shelter to another (**PSR ¶ 54**). The defendant could not stay with his mother in some of the homeless shelters because children over a certain age were not allowed. He was grazed by a bullet in 2004 in an event that did not involve him and was stabbed in a fight when he was seventeen. This was hardly the type of upbringing and nurturing environment that would set Mr. Gordon on a path to success.

Throughout the years Mr. Gordon has attempted several part time jobs. He worked at the Li'l Peach in Lynn, MA and also worked for a Temporary Agency (Labor Ready) moving furniture for an eviction company. His mother, who is now married, and living with her husband, has shown interest in her son by appearing in court, by written correspondence, and by staying in contact with defense counsel. Upon release, Mr. Gordon has some preliminary intentions of moving to Maine so that he may get a "fresh start" and avoid some of his former friends. (**PSR ¶ 64**). While lack of guidance as a youth was not ordinarily relevant under the old guideline regime, 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" takes on new meaning.

One only needs to spend a short time with Mr. Gordon in a "one on one" setting before one realizes that his criminal actions are likely the product of a poor environment. This 23 year old always presents himself in a respectful, polite and humble manner and has always expressed

genuine remorse for his actions. Hopefully this is some insight into his true character and some indication as to how serious the defendant is about never being involved with the criminal justice system again. Therefore, the defendant respectfully suggests that his proposed sentence would compliment his eagerness to live a productive and fruitful life.

    **2.**    **The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" § 3553(a)(2)(A).**

The defendant's proposed sentence is severe and adequate to reflect the goal of this factor. The defendant suggests that the aggregate total of custodial confinement is substantial, and therefore the proposed sentence is reasonable, sufficient and not greater than necessary.

Additionally, the custodial portion of the sentence awaiting trial has been under difficult conditions. Mr. Gordon is presently detained at MCI Cedar Junction, Walpole, in a Level VI, Maximum Security setting.

    **3.**    **The need for the sentence "to afford adequate deterrence to criminal conduct" § 3553(a)(2)(B).**

This is always a difficult factor to quantify, but the defendant respectfully suggests that given the circumstances of this case, the defendant's proposed sentence will satisfy this condition and is therefore, appropriate. The defendant acknowledges that deterrence is an important factor and there are two types of deterrence, specific deterrence aimed at the particular defendant and

general deterrence to the public in general. In his Presentence Interview, the defendant acknowledged that he "put himself here" (referring to MCI Cedar Junction) and has maintained that he is committed to never being involved in the criminal justice system again. In this particular case, the defendant suggests that by the proposed sentence, both types of deterrence are effectuated.

4.  **The need for the sentence "to protect the public from further crimes of the defendant" § 3553(a)(2)(c).**

The defendant realizes that he has made significant mistakes in his actions. With a forty month committed sentence, followed by supervised release, the court should have assurance that the public will be protected from further crimes of the defendant.

5.  **The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" § 3553(a)(2)(D).**

Mr. Gordon dropped out of 11th grade while attending the Lynn Evening Educational program in Lynn, MA. Therefore, it appears that it would be appropriate to provide the defendant with educational or vocational training.

**6.    The "kinds of sentences available." § 3553(a)(3)**.

In <u>Booker</u> the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. <u>Booker,</u> 125 S. Ct. at 756. This renders the sentencing guidelines advisory. <u>Id</u>. Therefore, the proposed sentence is available to the court.

**7.    The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement" § 3553(a)(4) & (5).**

The defendant respectfully moves this Court to consider a non guideline sentence for the reasons set forth in this Sentencing Memorandum.

**8.    The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" §3553(a)(6).**

The defendant respectfully suggests the proposed sentence is appropriate and will avoid "unwarranted sentencing disparity," among defendants who have been found guilty of similar conduct.

**9.    The need to provide restitution to any victims of the offense**

Restitution is a factor and is appropriate in this case.

## V - CONCLUSION

For all of the foregoing reasons, the defendant respectfully requests that this Court impose the defendant's proposed sentence. All of the factors and mitigating circumstances involved create a compelling argument for a slightly below guideline sentence. The defendant suggests that his proposed sentence is appropriate and sufficient, but not greater than necessary, to comply with the purposes and statutory directives set forth in 18 U.S.C. § 3553 and that the defendant's sentencing recommendation takes into account all of these factors.

Respectfully Submitted,
Antonio Gordon
By his attorney

Date: March 5, 2007

 /s/ Glen P. Randall
Glen P. Randall
79 Merrimack Street, Suite 300
Lowell, Massachusetts 01803
(978) 452-1700

### CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2007 a true copy of the above Sentencing Memorandum, was served upon all parties by filing this document through the ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants via first-class mail, postage prepaid.

 /s/ Glen P. Randall
Glen P. Randall